UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:14-cv-720-CHL

VEETA MIVELAZ,                                                                    Plaintiff,

v.

 COMMISSIONER OF SOCIAL SECURITY,                                  Defendant,

## MEMORANDUM OPINION AND ORDER

Veeta Mivelaz filed this lawsuit challenging the Commissioner's denial of her applications for disability insurance and widow's insurance benefits.  (DN 1.)

The parties have consented to magistrate judge jurisdiction over all proceedings in this case, including the entry of judgment.  (DN 15.)

For the reasons below, the Court will affirm the Commissioner's decision to deny Mivelaz's claims.  The Court will dismiss this action with prejudice.

## BACKGROUND

 In October 2011, Mivelaz filed claims for disability insurance benefits and widow's insurance benefits.  (Cert. Admin. Rec. ("CAR") 138, 141.)  She alleged disability beginning on February 1, 2009, due to diabetes, high blood pressure and cholesterol, acid reflux, and depression.   (*Id.* at 86.) The Commissioner denied Mivelaz's initial claims and upon reconsideration.  (*Id.* at 92, 107, 116, & 119.)

On August 21, 2013, an administrative law judge ("ALJ") held a hearing on Mivelaz's claims.  (*Id.* at 32.)  Mivelaz, who was represented by counsel, testified.  (*Id.* at 36 – 55.) William Irvin, a vocational expert, also testified.  (*Id.* at 55 – 57.)

1

The ALJ issued a written decision denying Mivelaz's disability insurance claim.[1]  (*Id.* at 28.)  The ALJ made the following findings.

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2.  There is no evidence the claimant has engaged in substantial gainful activity since February 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following medically determinable impairments: diabetes mellitus, hyperlipidemia, gastroesophageal reflux disease (GERD), and depression (20 CFR 404.1521 *et seq.*).

4.  The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

5.  The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2009, through the date of this decision (20 CFR 404.1520(c)).

(*Id.* at 21– 28.)  The Appeals Council denied Mivelaz's request for review.  (*Id.* at 1.)

## STANDARD OF REVIEW

"The Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record."  *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks omitted).  "The substantial evidence standard is less exacting than the preponderance of evidence standard.  If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would

---

[1]  The ALJ's decision makes no mention of Mivelaz's claim for widow's benefits. Mivelaz's pre-hearing brief argued only the merits of the disability claim, and her brief before this Court only challenges the denial of the widow's benefits claim.

support the opposite conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (internal citation omitted).

## DISCUSSION

The Commissioner evaluates whether a claimant is disabled through a sequential five-step process.   20 C.F.R. § 404.1520(a)(1); *Sullivan v. Finkelstein*, 496 U.S. 617, 620 (1990). Step two is at issue in this case.

At step two, the ALJ considers the medical severity of a claimant's impairment.   20 C.F.R. § 404.1520(a)(4)(ii).   If a claimant does not have any impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities, she is not disabled, and the analysis ends.  *Id.* §§ 404.1520(a)(4); 404.1520(c).  Examples of basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* § 404.1522(b).[2]

The Commissioner gives a treating physician's opinion controlling weight if the opinion is "(1) well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R.

---

[2] At the time the briefs were filed, examples of basic work activities were in Section 404.1521(b).  (*See* DN 18 at 3.)  Examples of basic work activities are now in Section 404.1522, which took effect on March 27, 2017.  20 C.F.R. § 404.1522.

§ 404.1527(c)(2))[3] (internal quotation marks and brackets omitted).  If the Commissioner does not give a treating physician's opinion controlling weight, the Commissioner weighs the opinion "based on the length, frequency, nature, and extent of the treatment relationship," and "the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376.

At step two, the claimant has the burden to show that she "has a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step two, "[i]f the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Id.* at 146 (brackets added).  Step two enables the Commissioner "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability."  *Id.* at 156 (O'Connor, J., concurring).  Still, the Commissioner should take "great care" before ending the evaluation at step two. *Id.* at 158; S.S.R. 85-28.

## ANALYSIS

Mivelaz raises two arguments.  (DN 17-1.)  The Court will address each in turn.

### I.   Whether substantial evidence supports the ALJ's determination that Mivelaz's impairments were not severe

Mivelaz argues that the ALJ erred as a matter of law in finding that her impairments were not severe.  (DN 17-1 at 2.)  Mivelaz argues that the ALJ erred in assigning minimal weight to

---

[3] Section 404.1527 applies for claims, like Mivelaz's, filed before March 27, 2017.  20 C.F.R. § 404.1527.  Section 404.1520c applies for claims filed after March 27, 2017.  *Id.* § 404.1520c.

the opinion of her treating physician, Dr. Melissa Barrett.  (*Id.* at 3.)  Mivelaz also takes issue

with the ALJ's reliance on the opinion of Dr. Mark Burns, a consultative examiner.  (*Id.* at 7.)

Dr. Barrett issued two separate opinions as to Mivelaz's restrictions.  In the first opinion,

dated January 29, 2011, Dr. Barrett listed Mivelaz's diagnoses of diabetes, hypertension, leg

pain, and back pain.  (CAR 290.)[4]  Dr. Barrett wrote that Mivelaz's prognosis was "fair," and

that she expected Mivelaz's impairments to last at least twelve months.  (*Id.*)  Dr. Barrett opined

that Mivelaz could stand or walk three hours out of an eight-hour workday and that Mivelaz

could sit eight hours out of an eight-hour workday.  (*Id.*)  Dr. Barrett also wrote that Mivelaz's

experience of pain would "rarely" be "severe enough to interfere with attention and

concentration needed to perform simple work tasks." (*Id.*)  Dr. Barrett opined that Mivelaz

would "frequently" be able to lift and carry ten pounds, and Mivelaz would "rarely" be able to

lift and carry twenty pounds.  (*Id.*)  Dr. Barrett also wrote that Mivelaz could "frequently"

perform fingering and handling, while she could "never" perform stooping.  (*Id.*)  Finally, Dr.

Barrett anticipated Mivelaz to be absent from work twice a month due to her impairments.  (*Id.*)

In the second opinion, dated August 15, 2013, Dr. Barrett listed Mivelaz's diagnoses as

fatigue; leg, back, and neck pain; and hand and foot numbness.  (*Id.* at 522.)  Dr. Barrett opined

that Mivelaz's prognosis was "poor."  (*Id.*)  Dr. Barrett wrote that Mivelaz could continuously sit

for two hours at one time and that she could sit about two hours total in an eight-hour workday.

(*Id.*)  Dr. Barrett opined that Mivelaz could continuously stand for two hours at one time and that

she could stand or walk for about two hours in an eight-hour work day.  (*Id.*)  Dr. Barrett wrote

that Mivelaz could "occasionally" lift and carry ten and twenty pounds during an eight-hour

---

[4] The first two diagnoses on the January 2011 opinion are illegible.  The Court assumes that the Commissioner's assertion in its brief that the 2011 opinion listed diagnoses of diabetes, hypertension, leg pain, and back pain is true.

5

workday.  (*Id.* at 523.)  Dr. Barrett noted that Mivelaz could "occasionally" twist and climb stairs, but she could "never" stoop, crouch, or climb ladders.  (*Id.* at 524.)  Dr. Barrett anticipated that Mivelaz's impairments would cause her to be absent from work more than twice a month. (*Id.*)

The ALJ gave Dr. Barrett's opinions little weight.  (CAR 26.)  The ALJ found Dr. Barrett's two opinions inconsistent with one another as to "how much the claimant can lift, how long the claimant can sit, stand, and/or walk, and with regards to manipulative limitations to name just a few."  (*Id.*)  The ALJ also found Dr. Barrett's opinions inconsistent with Mivelaz's reported activities and testimony.  (*Id.*)  Further, the ALJ found that Dr. Barrett's opinions were inconsistent with her own treatment notes indicating only conservative treatment and with treatment notes indicating that Mivelaz was feeling well and had no complaints.  (*Id.*)

Substantial evidence supports the ALJ's conclusion that Dr. Barrett's opinions were not entitled to controlling weight but instead were entitled to little weight.  Both the January 2011 and August 2013 opinions were inconsistent with other substantial evidence in the case record.

First, substantial evidence supports the ALJ's conclusion that Dr. Barrett's 2011 and 2013 opinions were inconsistent as to how much Mivelaz could lift, how long she could sit and stand or walk, and her manipulative limitations, among other inconsistencies.  The 2011 opinion said that Mivelaz could occasionally lift ten pounds, but the 2013 opinion said that Mivelaz could occasionally lift a larger amount: twenty pounds.  The 2011 opinion said that Mivelaz could sit for eight total hours in an eight-hour workday, but the 2013 opinion said that Mivelaz could sit for two total hours in an eight-hour workday.

Additionally, the 2011 opinion said that Mivelaz could "frequently" perform fingering and handling, but the 2013 opinion says that Mivelaz's ability to grasp and turn objects with his

6

hands and fine manipulations with his fingers was "unknown."  The 2013 opinion makes no mention of Mivelaz's diabetes and hypertension, and the 2011 opinion makes no mention of Mivelaz's neck pain or fatigue.  Neither opinion mentions Mivelaz's GERD, hyperlipidemia, nor depression, much less asserts that any of those impairments affected Mivelaz's ability to perform basic work activities.

Second, substantial evidence supports the ALJ's conclusion that Dr. Barrett's 2011 and 2013 opinions were inconsistent with Mivelaz's reported activities and her testimony.  In August 2013, Mivelaz testified that she rode in a car with her sister to Myrtle Beach in February 2013 and the year before that as well.  (CAR 48.)  This activity is inconsistent with an allegation that Mivelaz cannot sit for more than two hours in an eight-hour workday, as Barrett suggested in August 2013.

Further, Mivelaz testified that "[a]ny lifting, twisting, and turning" hurt her back.  (*Id.* at 41.)  On the other hand, she also testified that she could lift about twenty pounds comfortably. (*Id.* at 49.)   Additionally, Mivelaz testified that no doctor has restricted her activities in any way or told her not to lift a certain amount of weight.  (*Id.* at 42.)  Dr. Barrett's 2011 opinion said that Mivelaz could "frequently" lift ten pounds but "rarely" lift twenty pounds.  (*Id.* at 290.)   Dr. Barrett's August 2013 opinion said that Mivelaz could "occasionally" lift up to twenty pounds, and she could "occasionally" twist.  (*Id.* at 523 – 24.)

Third, substantial evidence supports the ALJ's conclusion that Dr. Barrett's two opinions were inconsistent with her treatment notes.  Mivelaz argues that "Dr. Barrett observed symptoms of fatigue with periodic numbness and stiffness in legs, back and feet."  (DN 17-1 at 6.)  Dr. Barrett's treatment notes do indicate that Mivelaz complained of fatigue and numbness at times. (*See, e.g.*, CAR 413.)  But Dr. Barrett mentioned fatigue only in the 2013 opinion, not the 2011

opinion, and only mentioned numbness in the 2013 opinion, not the 2011 opinion.  Mivelaz testified that her pain "comes and goes," and that the tingling was "pretty much" constant.  (*Id.* at 41.)

Additionally, substantial evidence supports the ALJ's reliance on the opinion of Dr. Mark Burns, a consultative examiner.  Dr. Burns conducted an examination of Mivelaz in December 2011.  (CAR 218.)  Dr. Burns concluded that Mivelaz "has the ability to perform activities involving sitting, standing, moving about, lifting, carrying and handling objects, hearing, seeing, speaking, and traveling.  … At this time, I see no real limits to her activities."  (*Id.* at 220.)

Mivelaz argues that Dr. Burns and the state agency examiners did not have the benefit of reviewing the entire record, including Dr. Barrett's two medical opinions.  (DN 17-1at 7.)  At the time Dr. Burns examined Mivelaz in December 2011, Dr. Burns could not have had access to Dr. Barrett's second opinion, which was written nearly two years later.  Dr. Barrett's first opinion said that Mivelaz's experience of pain would "rarely" be severe enough to interfere with her attention and concentration and that she could sit for eight hours in an eight-hour workday.  (CAR 290.)  Thus, even if Dr. Burns had reviewed the first opinion before making his determination that Mivelaz had no real limits to her activities, it is unlikely that having access to the first opinion would have changed his analysis.

Altogether, Mivelaz has not shown that the ALJ erred in discounting Dr. Barrett's opinions and instead relying on Dr. Burns's opinion.

## II.     <u>Whether substantial evidence supports the ALJ's finding that Mivelaz was not credible.</u>

Next, Mivelaz argues that the ALJ erred in finding her not credible because she had a strong work history.  (DN 17-1 at 8 – 9.)  She argues that though the ALJ mentioned her strong

work history, the ALJ did not properly consider that factor in making a determination as to her credibility.  (*Id.*)

The ALJ noted that Mivelaz "has a good at least twenty year work and earnings history (Exhibit 3D).  This is taken into consideration when evaluating the credibility of the claimant and her allegations of disability."  (CAR 21.)  On the other hand, the ALJ found that Mivelaz's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (*Id.* at 23.)  The ALJ based the credibility determination on a finding that Mivelaz's "history of diabetes mellitus, hyperlipidemia, gastroesophagaeal reflux disease (GERD) and depression are not well supported by medical evidence of record."  (*Id.*)  The ALJ also noted the "routine and conservative" treatment Mivelaz received for her physical and mental impairments.  (*Id.* at 25.)

When substantial evidence supports an ALJ's evaluation of a claimant's credibility, the Court must accord great weight and deference to that credibility finding.  *Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Indeed, the court of appeals has said that an ALJ's "credibility findings are virtually unchallengeable."  *Ritchie v. Comm'r of Soc. Sec.*, 540 F.App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted).

Substantial evidence supports the ALJ's determination that Mivelaz's statements regarding her symptoms were not entirely credible.  Specifically, the ALJ cited Mivelaz's testimony regarding her daily activities as inconsistent with her allegations of disability.  (CAR 25.)  Mivelaz testified that on a typical day, she takes a "very casual" twenty-minute walk with her dogs.  (*Id.* at 45.)  She also testified that in February 2013, she rode with her sister in a car to Myrtle Beach.  (*Id.* at 48.)  These activities are inconsistent with Mivelaz's claim that she is disabled.

**CONCLUSION**

Altogether, substantial evidence supports the ALJ's determination that Mivelaz did not have a severe impairment that affected her ability to perform basic work activities.

**ORDER**

The Court **AFFIRMS** the Commissioner's decision to deny Mivelaz's claims.  The Court **DISMISSES** this action, **with prejudice**.  The Court will enter a separate judgment in accordance with this opinion.